UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:24-MC-00008-RGJ

**GRAHAM PACKAGING COMPANY, L.P.**                          **PETITIONER**

**VS.**

**INDORAMA VENTURES ALPHAPET
HOLDINGS, INC., et al.**                          **RESPONDENTS**

<u>**MEMORANDUM OPINION
AND ORDER**</u>

Petitioner Graham Packaging Company, L.P. ("Graham") moves to enforce a subpoena it served on Indorama Ventures AlphaPet Holdings, Inc., Indorama Ventures Public Company Limited, and Auriga Polymers, Inc. (collectively "Auriga"). (DN 1). Auriga has responded in opposition. (DN 13). Graham has filed a reply. (DN 19). The District Judge has referred this matter to the undersigned United States Magistrate Judge for resolution of all non-dispositive motions. (DN 12).

<u>I. Background</u>

At issue is Graham's subpoena to Auriga requesting the production of documents related to an underlying patent infringement action pending in this District, *Graham Packaging, L.P. v. Ring Container Technologies, LLC*, No. 3:23-cv-00110-RGJ. The infringement action derives from Graham's '809 Patent for a container used in the food and beverage industry with enhanced oxygen scavenging capabilities.[1] Graham allegedly began developing the technology for this container in 2014, and the United States Patent and Trademark Office issued the '809 Patent on

---

[1] The full name for the '809 Patent is U.S. Patent No. 11,345,809 "*Oxygen Scavenging Compositions Requiring No Induction Period.*"

May 31, 2022. Graham claims that Ring Container Technologies, LLC ("Ring") is marketing and selling an oxygen scavenging container, under the name of BarrierGuard® OxygenSmart™, that infringes on the '809 Patent. Ring defends that Graham's '809 Patent is invalid because Graham's patented technology uses prior art from Auriga called "Oxyclear®," which was developed prior to the '809 patent being filed.

On April 12, 2024, Graham served the disputed subpoena on Auriga, commanding compliance in Charlotte, North Carolina, where Auriga is located. (DN 2-1). At Auriga's request, the Western District of North Carolina transferred this subpoena action to this District on September 9, 2024, pursuant to Federal Rule of Civil Procedure 45(f). (DN 9). The subpoena asked for production off thirty-five categories of documents that Graham believes are directly relevant to the claims and defenses in the underlying infringement action. (DN 2-1). For example, Graham requested documents relating to Auriga's development and testing of its Oxyclear® products, the components of the Oxyclear® products and other PET containers, Auriga's marketing and sale of the Oxyclear® products and other PET containers, and Auriga's products developed in connection with or covered by U.S. Patent No. 8,647,728. (*Id.*). Graham's subpoena also commanded Auriga to designate and produce a corporate representative for a Rule 30(b)(6) deposition. (*Id.*).

According to Graham, Auriga produced forty-three documents on June 18, 2024, and indicated it was continuing to search for responsive files.[2] In doing so, Auriga lodged no written objections to Graham's subpoena. Over the next several weeks, Graham sent emails to Auriga, documenting the deficiencies in Auriga's production. (*See* DN 2-3; DN 2-4). Graham specifically noted Auriga's production was nonresponsive as to Request Nos. 4, 6-9, 12-13, 15, 19-20, 22-24, and 30-31. (DN 2-4). On August 5, 2024, Auriga produced over 17,000 documents to Graham.

---

[2] Graham cites to "Ex. 2 (June 18, 2024 email from J. Doody)," but Exhibit 2 does not include any emails from June 18, 2024.

(DN 2-12). With its production, Auriga expressly confirmed it was not objecting to any document request from the subpoena. (*Id.*).

After reviewing the 17,000 documents Auriga produced, Graham emailed Auriga, seeking immediate production of materials responsive to Request Nos. 9, 11, 12, 22, and 23 from the subpoena. (DN 2-7). Graham and Auriga then participated in multiple meet-and-confers to discuss alleged deficiencies with Auriga's production. On August 26, 2024, Auriga communicated to Graham its belief that some document requests from the subpoena are irrelevant to Graham's patent infringement claim against Ring. (DN 2-3). Graham then filed the instant motion to compel. (DN 1).

## II. Legal Standard

Trial courts have wide discretion in resolving discovery issues. *See S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)). The scope of discovery is defined in Federal Rule of Civil Procedure 26(b)(1) as "any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Federal courts broadly construe this language to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The broad scope of discovery is not without limits, however. Specifically, courts must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Rule 45 governs subpoenas. Under this Rule, a party may serve a subpoena on a non-party to command their appearance at a deposition or "to produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control . . . ." Fed. R. Civ. P. 45(a)(1)(A)(jjj). It is well established that "the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011) (quoting *Barrington v. Mortgage IT, Inc.*, No. 07-61304-CIV, 2007 WL 4370647, at *3 (S.D. Fla. Dec. 10, 2007)); *see also SBAV, LP v. Porter Bancorp, Inc.*, No. 3:13-CV-710-TBR, 2015 WL 13567017, at *5 (W.D. Ky. July 6, 2015). The subpoenaing party may move for an order compelling production when the subpoenaed party objects or otherwise fails to comply. Fed. R. Civ. P. 45(d)(2)(B)(i).

### III. Analysis

Graham's Motion to Compel rests on three arguments. First, Graham contends its subpoena is reasonable in scope, seeks important and relevant material, and is narrowly tailored. (DN 1). The requested documents, Graham explains, are highly relevant to the underlying litigation, particularly for establishing the extent to which certain Auriga materials, communications, sales, and presentations may or may not be prior art. (*Id.*). Second, Graham argues Auriga has waived any objections to the subpoena by failing to serve written objections within fourteen days as required by Rule 45(d)(2)(B). (*Id.*). And, finally, Graham claims Auriga's delays have been deliberate and prejudicial, especially because Auriga has been responsive and complaint with Ring's subpoenas in the case. (*Id.*).

The Court starts with Graham's waiver argument.  Rule 45 provides that a nonparty served with a subpoena may make written objections "before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). A non-party's

"failure to serve written objections to a subpoena within the time specified by Rule 45 typically constitutes a waiver of such objections." *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136-37 (S.D. Ohio 1999) (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y 1996) (*Angell v. Shawmut Bank Connecticut Nat'l Assoc.*, 153 F.R.D. 585, 590 (M.D.N.C. 1994)). But many courts decline to apply such a waiver where "unusual circumstances and . . . good cause" exist. *Id.* at 136; *see also King v. Harwood*, No. 3:15-CV-762-GNS, 2018 WL 547579, at *3-4 (W.D. Ky. Jan. 24, 2018) (noting that in some circumstances strict application of waiver for failure to timely object is not appropriate); *Hartford Casualty Ins. Co. v. Calcot, Ltd.*, No. 2:07-cv-02405-BBD-dkv, 2009 WL 10699695, at *3-4 (W.D. Tenn. Apr. 7, 2009). Unusual circumstances may be present where: "(1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoenaed witness in a non-party acting in good faith; and (3) counsel for the witness and counsel for the subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenge the legal basis for the subpoena." *Hartford*, 2009 WL 10699695, at 4 (quoting *Am. Elec. Power Co.*, 191 F.R.D. at 136). Critically, status as a non-party does not relieve the non-party of its obligations to respond to proper discovery requests or comply with the federal rules. *Id.* But a non-party's status may entitle it to special "consideration regarding expense and inconvenience." *Id.* (citing *Am. Elec. Power Co.*, 191 F.R.D. at 136).

In this case, Graham served the subpoena duces tecum on Auriga on April 12, 2024.[3] Pursuant to Rule 45(d)(2)(B), Auriga had until April 26, 2024 to serve written objections to Graham. Auriga did not serve any written objections by that date. When Graham inquired on June 14, 2024 about whether Auriga would be serving a response and/or objections when it produced

---

[3] The subpoena specified that April 25, 2024 was Auriga's deadline for producing responsive documents.

documents, Auriga responded it would "review the 30(b)(6) subpoena again before [it] produced and will correspond separately in the event that [it had] any objections." (DN 2-2). Any indecision as to whether Auriga would be submitting late objections seemed to be resolved by Auriga's production of documents to Graham on August 5, 2024, which explicitly stated that "Auriga makes no objection to any document request." (DN 2-12). Three weeks later, however, Auriga attempted to reverse course. Auriga emailed Graham on August 26, 2024, asserting substantive challenges for the first time to Graham's production requests. (DN 2-3). Auriga's objections came four months after the objection period expired.

Graham asks the Court to deem Auriga's late objections waived and require Auriga to produce all requested documents, in addition to identifying a witness for each deposition topic. (DN 2). Auriga's response brief does not specifically address Graham's waiver arguments. Instead, Auriga argues Graham has no basis for discovering information not directly related to its patent-infringement complaint. (DN 13). Auriga also states Graham is not entitled to further production because Graham's patent infringement claim is meritless. (*Id.*). Graham's reply emphasizes how Auriga's response only discusses the merits of the underlying case, which are irrelevant to whether Auriga properly complied with the subpoena. (DN 19). Graham alleges that Auriga's focus on the merits of the underlying action demonstrates that Auriga is acting in concert with Ring based on its commercial interest in having Graham's patent invalidated. (*Id.*).

By failing to address Graham's waiver claim, Auriga essentially waived any opposition to it. *See Hartford Casualty Ins.*, 2009 WL 10699695, at *4 (finding non-party waived objections when they failed to timely object to subpoena duces tecum and failed to address the plaintiff's waiver argument in responding to motion to compel). Yet even broadly construing Auriga's response, the Court cannot find proof of unusual circumstances to excuse Auriga's untimely

objections. While Graham's document requests are extensive, they are neither patently overbroad nor exceeding the fair bounds of discovery. The breadth of Graham's requests generally correlates to the importance of the issue at stake. Whether Auriga's products constitute prior art that invalidates Graham's '809 patent is Ring's key defense in the underlying patent infringement case.

Additionally, both Auriga's response brief and the August 26, 2024 email identifying substantive concerns with Graham's document requests fail to identify specific documents requests that exceed the permissible bounds of discovery. The August 26, 2024 email only noted that Auriga had "review[ed] the matter . . . and maintain[s] the view that the subpoena document requests address numerous topics not relevant to Graham's patent infringement claim" including requests that "generally seem to target potential trade secret misappropriation." (DN 2-3). The Court cannot glean from Auriga's vague statements which discovery requests are allegedly overbroad. Then Auriga's response brief primarily disputes the merits of Graham's claims in the underlying action. But whether a claim is ultimately successful has no bearing on the discoverability of information relevant to such claim. Again, the scope of discovery under Rule 26 is intentionally broad and extends to subpoenas issued to nonparties. Granting discovery objections based on a claim's perceived success would thwart the entire discovery process.

Nor do the other "exceptional circumstances" identified in *American Electric Power Company* apply to excuse Auriga's failure to object. Although the Parties conferred numerous times relating to Auriga's compliance, Auriga never voiced substantive concerns with the document requests until August 26, 2024, four months after the objection deadline. The email communications between the Parties demonstrate Graham giving Auriga several opportunities to assert late objections and Auriga repeatedly and unequivocally declining to do so. Moreover, Auriga never represented that it would formally challenge the subpoena. Auriga did not

communicate an intent to file a motion to quash the subpoena or to otherwise seek court intervention. It was Graham that ultimately sought the Court's assistance based on Auriga's continued noncompliance. The Court cannot say Auriga acted in good faith by repeatedly representing it did not have substantive objections to Graham's subpoena only to reverse course and substantively challenge the subpoena, at the eleventh hour.

Though Auriga fails to identify "exceptional circumstances" for its failure to timely object, the Court still considers that Auriga, a nonparty, spent time and effort producing over 17,000 documents to Graham. Certain of Graham's requests date back ten years or longer, and responsive documents were not easily located. The Court recognizes the significant additional time and expense Auriga would have to expend if required to produce all responsive documents. Bearing this in mind, the Court will limit its waiver determination as follows:

(1) Auriga will not be required to produce responsive documents to Request Nos. 12, 22, and 23. These requests are better directed at Ring in the underlying patent infringement action.[4]

(2) Auriga will be required to search for and produce all responsive documents to Request Nos. 4, 6-9, 13, 15, 19, 20, 24, 30, and 31. If after searching Auriga cannot locate responsive documents for certain of these requests, it must provide to Graham a detailed summary of its search efforts and certification under oath that it has complied with its discovery obligations.

(3) Auriga must provide a Rule 30(b)(6) witness for each deposition topic. It is possible that one witness may be able to testify as to all the listed topics.

---

[4] Because the fact discovery deadline in the underlying patent infringement action is January 30, 2025, Ring will have ample time to comply with Graham's discovery requests.

## IV. Order

**IT IS THEREFORE ORDERED** that Graham's Motion to Compel (DN 1) is **GRANTED** to the extent identified above. Auriga will have **thirty (30) days** from date of entry of this Order to provide Graham with documents responsive to Request Nos. 4, 6-9, 13, 15, 19, 20, 24, 30, and 31 and to identify Rule 30(b)(6) witnesses that can testify as to the listed deposition topics.

Regina S. Edwards, Magistrate Judge

United States District Court

October 15, 2024

Copies:          Counsel of Record